**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Claudia Sampedro, et al., | No. CV-18-04811-PHX-SPL |
| Plaintiffs, | |
| vs. | **ORDER** |
| ODR Management Group LLC, | |
| Defendant. | |

Before the Court are the following Motions to Strike:

1. Plaintiffs' Motion to Strike the Defendant's Expert Report and Testimony of Michael Einhorn (Doc. 44);

2. Defendant's Motion to Strike Report and Testimony of Martin Buncher (Doc. 47); and

3. Defendant's Motion to Strike Report and Testimony of Stephen Chamberlin. (Doc. 48)

The Motions are fully briefed. (Docs. 52, 53, 55, 56, 57, 58) For the following reasons, the Court will deny all three Motions to Strike.[1]

**I.    BACKGROUND**

This case concerns the use of Plaintiffs' likenesses without their permission. The

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motion is suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

Plaintiffs, Claudia Sampedro, Tiffany Toth Gray, CJ Gibson, Amanda Cerny, Jessica Killings, Brenda Geiger, Amber Lancaster and Paola Canas, are all professional models to some degree. (Docs. 43 at ¶¶10–17, 46 at ¶1) Defendant ODR Management Group LLC owned and operated Club Cloud N9ne, a now-closed nightclub in Phoenix, Arizona. (Docs. 43 at ¶20, 46 at ¶2) Defendant used eight images of Plaintiffs in advertisements it distributed for events at the nightclub. (Docs. 43 at ¶18, 46 at ¶¶4–12) Plaintiffs allege the images were used without their permission. (Doc. 43 at ¶6) Plaintiffs filed a Complaint on December 19, 2018 asserting the following claims: (1) violation of the common law right of publicity, (2) a violation of the Lanham Act, and (3) a false light invasion of privacy claim. (Doc. 1 at ¶¶46–87) Counts One and Three are brought by Plaintiffs Geiger, Lancaster, Canas and Killings. (Doc. 1 at 16, 21) Count Two is brought by all Plaintiffs. (Doc. 1 at 18) Defendant filed an Answer asserting (1) Plaintiffs failed to state a claim upon which relief can be granted and (2) that Plaintiffs failed to mitigate their damages. (Doc. 11 at 10) Both sides have also filed Motions for Summary Judgment, which the Court will address in due course. (Docs. 42, 45) Both sides have hired expert witnesses and both sides seek to exclude the testimony and reports of the other. (Docs. 44, 47, 48) Plaintiffs hired Stephen Chamberlin to opine on valuation. (Doc. 55-1 at 5) Plaintiffs hired Martin Buncher to conduct a market research survey on Defendant's advertisements. (Doc. 47-2 at 5) Defendant hired Michael Einhorn as a rebuttal expert to Mr. Chamberlin. (Doc. 55 at 3) There are several similar cases pending in this District involving the use of models' likenesses without permission.[2] Some of the Plaintiffs in this case are also involved in the

---

[2] *See, e.g.*, *Longoria, et al. v. Kodiak Concepts LLC*, No. CV-18-02334-PHX-DWL (D. Ariz. July 24, 2018); *Skinner et al. v. Tuscan Incorporated et al.*, No. CV 18–319–RCC (D. Ariz. July 2, 2018); *Mitcheson v. El Antro, LLC*, No. CV 19–1598–GMS (D. Ariz. March 8, 2019); *Pepaj v. Paris Ultra Club, LLC*, No. CV 19–1438–MTL (D. Ariz. March 1, 2019); *Ratchford v. Dalton Corp.*, No. CV–19–1421–SRB (D. Ariz. Feb. 28, 2019); *Longoria v. Whitefeather Ventures, LLC*, No. CV–18–394–SHR (D. Ariz. Aug. 10, 2018); *Toth Gray v. LG&M Holdings, LLC*, No. CV–18–2543–SRB (D. Ariz. Aug. 10, 2018); *Takeguma v. Freedom of Expression, LLC*, No. CV–18–2552–MTL (D. Ariz. Aug. 10, 2018); *Pinder v. 4716 Inc.*, No. CV–18–2503–RCC (D. Ariz. Aug. 7, 2018); *Electra v. Id. Business Holdings, LLC*, No. CV–18–1604–SRB (D. Ariz. May 25, 2018); *Geiger v.*

other litigation. The three experts at issue in the instant Motions are also involved in the other litigation, and the parties have in fact filed these same Motions almost verbatim in the other cases.[3]

## II.     LEGAL STANDARD

Local Rule of Civil Procedure ("LR Civ.") 7.2(m) allows parties to bring motions to strike when there is a rule or statute otherwise permitting it. Federal Rule of Evidence ("FRE") 702 permits parties to file motions to strike to ensure relevance and reliability of expert testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152–53 (1999). Courts have a "gatekeeping" function when it comes to expert testimony. *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010), *as amended* (Apr. 27, 2010). "When an expert meets the threshold established by Rule 702 as explained in *Daubert*, the expert may testify and the jury decides how much weight to give that testimony." *Id.* When the expert does not meet the threshold, the Court may prevent him from providing testimony. *See Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013) ("Basically, the judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable.").

"Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action." Fed. R. Evid. 401. Reliability is determined separately. "The trial court must first assess whether the testimony is valid and whether the reasoning or methodology can properly be applied to the facts in issue." *Puente v. City of Phoenix*, No. CV-18-02778-PHX-JJT, 2021 WL 1186611, at *1 (D. Ariz. Mar. 30, 2021) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1999)). The *Daubert* Court provided factors to

---

*Creative Impact Inc.*, No. CV–18–1443–JAT (D. Ariz. May 10, 2018).

[3] *Longoria, et al. v. Kodiak Concepts*, No. CV-18-02334-PHX-DWL (Docs. 45, 51–52); *Skinner*, No. CV 18–319–RCC (Docs. 43, 48–49); *Mitcheson*, No. CV 19–1598–GMS (Docs. 31, 42–43); *Pepaj*, No. CV 19–1438–MTL (Docs. 37, 50–51); *Toth Gray*, No. CV–18–2543–SRB (Docs. 77, 80–81); *Takeguma*, No. CV–18–2552–MTL (Docs. 37, 45, 46); *Pinder*, No. CV–18–2503–RCC (Docs. 78–80); *Electra*, No. CV–18–1604–SRB (Docs. 53, 61, 63); *Geiger*, No. CV–18–1443–JAT (Docs. 66, 69–70).

3

consider including: "whether the methodology can be tested; whether the methodology has been subjected to peer review; whether the methodology has a known or potential rate of error; and whether the methodology has been generally accepted within the relevant professional community." *Puente*, 2021 WL 1186611, at *1 (citing *Daubert*, 509 U.S. at 593–94. The FRE 702 inquiry is flexible. *Id.* "The focus ... must be solely on [the expert's] principles and methodology, not on the conclusions that they generate." *Id.* (citing *Daubert*, 509 U.S. at 594).

### III. DISCUSSION

The Court will discuss each expert in turn.

### A. Defense Expert Michael Einhorn

Plaintiffs argue Einhorn is unqualified, and that his opinions are unreliable and unhelpful to a trier of fact. (Doc. 44 at 8–14) Plaintiffs also point out that this Court granted a Motion to Strike regarding Einhorn in a similar case, *Longoria v. Kodiak Concepts LLC*. No. CV-18-02334-PHX-DWL, 2021 WL 1100373 (D. Ariz. Mar. 23, 2021). (Doc. 44 at 11) There, the Defendant's Motions to Strike were denied in full and Plaintiffs' Motion to Strike was denied in part. *Longoria*, 2021 WL 1100373 at *16. Plaintiffs' Motion was granted only as to Michael Einhorn's opinions on affirmative valuation. *Id.* at *9.

Defendant responds that Einhorn is qualified due to his education and experience, that Plaintiffs have not shown his opinions are unreliable, and that his opinions will help the trier of fact because Plaintiffs have hired experts on the same issues. (Doc. 55 at 6–10) Defendant also states despite the ruling in *Longoria*, Einhorn's opinions have been allowed in full in other cases in this district, citing five such cases.[4] (Doc. 55 at 10–11) Defendant argues the Court's reasoning in those five cases is more persuasive here. (Doc. 55 at 11)

    i.    *Qualifications*

An expert is qualified "by knowledge, skill, experience, training, or education." Fed.

---

[4] *Pepaj*, 2021 WL 632623 at *4; *Takeguma*, 2021 WL 487884 at *7; *Mitcheson*, 2020 WL 7075239 at *2; *Skinner*, 2020 WL 5946897 at *9; *Toth Gray v. LG&M Holdings LLC*, 2020 WL 9074812 at *10.

R. Evid. 702. The witness must be an expert "in the relevant field." *Kumho Tire Co.*, 526 U.S. at 152. This Court found in *Longoria* that Einhorn was qualified in economics though he lacked experience in the modeling industry. 2021 WL 1100373 at *11. After reviewing his education and work experience, the Court again finds he is qualified as an economist to make valuation opinions. *See Mitcheson v. El Antro LLC*, No. CV-19-01598-PHX-GMS, 2020 WL 7075239, at *2 (D. Ariz. Dec. 3, 2020) ("[E]conomists and evaluation experts may be permitted to testify in cases where they lack experience in the narrower industry at issue when they have relevant experience in valuation.") (citing *People v. Kinder Morgan Energy Partners*, 159 F. Supp. 3d 1182, 1190 (S.D. Cal. 2016); *Abu-Lughod v. Calis*, No. CV132792DMGGJSX, 2015 WL 12731921, at *2 (C.D. Cal. July 1, 2015)).

      *ii.*     *Reliability*

As set forth above, an expert opinion is reliable when the methodology behind it is sound. *See supra* II. The criteria for reviewing methodology is flexible. *Puente*, 2021 WL 1186611 at *1. Here, Plaintiffs argue Einhorn failed to disclose his methodology and it is thus impossible for the Court to evaluate. (Doc. 44 at 12) Plaintiffs also call his use of Google searches "desperate." (Doc. 44 at 12) Defendant responds that Plaintiffs did not challenge the substance of the data Einhorn used and failed to produce usable evidence, forcing Einhorn to rely on market research instead. (Doc. 55 at 9) Plaintiffs point out Einhorn has not disclosed the "comparable contracts" he used to Plaintiff or the Court. (Doc. 57 at 4–5) However, Einhorn's expert report sets forth his experience in similar cases, lists the materials he used, and explains process behind his calculations. (Doc. 55-5 at 6–9, 69–77) Like this Court found in *Mitcheson*, the Court now finds Plaintiff's arguments go more to the weight of Einhorn's testimony, not its reliability. 2020 WL 7075239 at *3 (quoting *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1231 (9th Cir. 1998) ("Disputes as to the strength of [an expert's] credentials, faults in his use of [a particular] methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of his testimony.") (internal citations omitted)) (citing *Vaughn v. City of Los Angeles*, No. CV1603086ABAJWX, 2017 WL 8786868, at *3 (C.D. Cal. Oct. 30, 2017)

(objections that the expert relied on undisclosed facts and based opinion on only limited documents "go to weight, not admissibility.")). Therefore, the Court finds Einhorn's opinion sufficiently reliable under FRE 702.

### iii.  Relevance

"Expert testimony is relevant if the testimony is sufficiently tied to the facts of a case such that it will aid the jury in understanding evidence or resolving a factual dispute." *Takeguma v. Freedom of Expression LLC*, No. CV-18-02552-PHX-MTL, 2021 WL 487884, at *5 (D. Ariz. Feb. 10, 2021) (citing *Daubert*, 509 U.S. at 591). "For an expert's testimony to help the trier of fact understand the evidence, 'the subject matter at issue must be beyond the common knowledge of the average layman.'" *Mata v. Or. Health Auth.*, 739 F. App'x 370, 372 (9th Cir. 2018) (quoting *United States v. Finley*, 301 F.3d 1000, 1007 (9th Cir. 2002)). Einhorn provided opinions on the valuation of the use of the Plaintiffs' images. (Doc. 55 at 4) Plaintiffs hired Stephen Chamberlin to opine on the same thing. (Doc. 55-1 at 5) These opinions go directly to the damages alleged in the case and will aid the jury or trier of fact in settling a factual dispute. *See Toth Gray v. LG&M Holdings LLC*, No. CV-18-02543-PHX-SRB, 2020 WL 9074812, at *10 (D. Ariz. Sept. 3, 2020) (citing *Daubert*, 509 U.S. at 591). Therefore, the Court finds Einhorn's opinion sufficiently relevant under FRE 702.

### B.  Plaintiff Expert Martin Buncher

Defendant argues Martin Buncher should be stricken because his survey and report are methodologically flawed, rendering them unreliable and irrelevant. (Doc. 47 at 3) Plaintiffs responds that Buncher's survey and report were conducted "according to accepted principles of consumer marketing" and tests issues relevant to the Plaintiffs' Lanham Act claims. (Doc. 53 at 2) His qualifications are not at issue. (Doc. 53 at 4) This Court has repeatedly refused to strike Buncher's opinion and testimony in related cases, finding it admissible.[5] There is nothing different about this case that would change the

---

[5] *Longoria, et al. v. Kodiak Concepts,* 2021 WL 1100373 at *6; *Pepaj*, 2021 WL 632623 at *3; *Takeguma*, 2021 WL 487884 at *4; *Mitcheson*, 2020 WL 7075239 at *5–6;

Court's mind. Nevertheless, it will conduct its analysis.

### i. Reliability

Defendant specifically disputes Buncher's methodology used in the survey, arguing he failed to use a control group, failed to include a proper control question, worded his other questions poorly, worded his answer choices poorly, and relied on an "unrepresentative sample." (Doc. 47 at 8–16) Plaintiffs respond that these critiques go only to the weight of Buncher's testimony and do not affect its admissibility. (Doc. 53 at 4) The Court agrees. As this Court has pointed out previously, Defendant's issues with the survey are technical, and under Ninth Circuit law, technical issues are considered to go to the weight of the expert opinion, not admissibility. *See Takeguma*, 2021 WL 487884 at *3–4 (citing first *Keith v. Volpe*, 858 F.2d 467, 480 (9th Cir. 1988); citing second *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1263 (9th Cir. 2001)). The Ninth Circuit approach is to "admit the survey" and "discount its probative value," rather than exclude survey evidence as Defendant suggests. *See Prudential Ins. Co. of America v. Gibralter Financial Corp.*, 694 F.2d 1150, 1156 (9th Cir. 1982).

### ii. Relevancy

Defendant argues Buncher's survey "did not properly measure the relevant issue in the case," which is the Lanham Act claim. (Doc. 47 at 16) Specifically, Defendant argues there is no way to know whether the survey respondents recognized the Plaintiffs when they were shown the ads. (Doc. 47 at 17) Plaintiffs respond that Buncher's survey did test recognition and other relevant Lanham Act issues. (Doc. 53 at 11–12) The survey tested recognition as well as whether the respondents thought the women in the images agreed to endorse the Club, approved of the use of the image, and other areas that go directly to Defendant's alleged misrepresentations. (Doc. 47-2 at 16–17) These issues are relevant to Plaintiffs' claims. *See Pepaj v. Paris Ultra Club LLC*, No. CV-19-01438-PHX-MTL, 2021 WL 632623, at *3 (D. Ariz. Feb. 18, 2021). The survey and report can help the trier of fact determine whether the use of Plaintiffs' images deceived potential consumers. *See Skinner*, 2020 WL 5946897 at *6; *Toth Gray*, 2020 WL 9074812 at *6.

*Takeguma*, 2021 WL 487884 at *5 (citing *Daubert*, 509 U.S. at 591). Therefore, they are relevant. *Id.*

### C. Plaintiff Expert Stephen Chamberlin

Defendant argues Stephen Chamberlin's methodology is unreliable and that other Courts have stricken his opinion and testimony. (Doc. 48 at 6–12) Plaintiffs respond that Chamberlin's methodology is accepted and that the case law Defendant cites has no bearing on this case because the Court was not in this District. (Doc. 52 at 4–7) Critically, *this* Court has repeatedly denied Motions to Strike Chamberlin's testimony and opinion in related cases.[6]

Defendant specifically takes issue with the methodology Chamberlin used for calculating Plaintiffs' daily rates and damages based on usage of the images of each Plaintiff. (Doc. 48 at 6–11) Chamberlin's report states his methodologies are based on his 30 years of experience in the "Model and Talent Industry." (Doc. 48-4 at 4) The report fully explains how models' rates are normally calculated, how usage of images is normally quantified, and other additional factors considered in modeling contracts (Doc. 48-4 at 10,12–13) As stated, this Court has repeatedly found Chamberlin's testimony meets the FRE 702 threshold based on his thorough explanations and years of experience. Furthermore, questions about expert methodology go to the weight of the opinion, not the admissibility. *See Kennedy*, 161 F.3d at 1231, *see also Takeguma*, 2021 WL 487884 at *6 (citing *Dorn v. Burlington N. Santa Fe R.R. Co.*, 397 F.3d 1183, 1196 (9th Cir. 2005)). The Court finds nothing different in this case that warrants a departure from its past decisions and finds Chamberlin's report and testimony admissible under FRE 702.

### IV. CONCLUSION

Keeping in line with its past decisions regarding these three experts in similar cases, the Court finds each expert's opinion meets the threshold of FRE 702.

---

[6] *Longoria v. Kodiak Concepts,* 2021 WL 1100373 at *9; *Pepaj*, 2021 WL 632623 at *4; *Takeguma*, 2021 WL 487884 at *6; *Mitcheson*, 2020 WL 7075239 at *4; *Skinner*, 2020 WL 5946897 at *8; *Toth Gray*, 2020 WL 9074812 at *10.

For the foregoing reasons,

**IT IS ORDERED** that Plaintiffs' Motion to Strike the Defendant's Expert Report and Testimony of Michael Einhorn (Doc. 44) is **denied**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike Report and Testimony of Martin Buncher (Doc. 47) is **denied**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike Report and Testimony of Stephen Chamberlin. (Doc. 48) is **denied**.

Dated this 19th day of May, 2021.

Honorable Steven P. Logan
United States District Judge