**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Claudia Sampedro, et al., | No. CV-18-04811-PHX-SPL |
| Plaintiffs, | |
| vs. | **ORDER** |
| ODR Management Group LLC, | |
| Defendant. | |

## I. BACKGROUND

Plaintiffs are professional models, actresses, and social media personalities. (Doc. 1 at ¶ 1). Plaintiffs allege Defendant ODR Management Group LLC used their photos, which were posted on their own social media platforms, in advertisements and promotions for its night club, Cloud Nine, on social media without their consent and without negotiating or purchasing the right to do so. (Doc. 1 at ¶¶ 3-5). On December 19, 2018, Plaintiffs filed a Complaint in this Court alleging misappropriation of likeness, violation of the Lanham Act, and false light invasion of privacy. (Doc. 1 at 16-22). Before the Court are the parties' cross motions for summary judgment (Docs. 42 & 45).

## II. LEGAL STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986). The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See id*. at 322–23. When considering a motion for summary judgment, a court must view the factual record and draw all reasonable inferences in a light most favorably to the nonmoving party. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002).

**III.   ANALYSIS**

   **A.  Misappropriation of Likeness**

Defendant's only argument as to Plaintiff's misappropriation of likeness claim is that Arizona does not recognize a common law right of publicity. (Doc. 61 at 7-10); (Doc. 45 at 8-11). Even a cursory review of caselaw on this issue reveals that this Court has repeatedly rejected this exact argument. *See, e.g.*, *Geiger v. Creative Impact Inc.*, No. CV-18-01443-PHX-JAT, 2020 WL 3545560, at *7 (D. Ariz. June 30, 2020) (considering the exact same arguments as Defendant makes in this case and concluding that "the Court rejects Defendant's argument that Arizona law does not recognize a claim for appropriation"); *Gray v. LG&M Holdings LLC*, No. CV-18-02543-PHX-SRB, 2020 WL 6200165, at *3 (D. Ariz. Sept. 23, 2020) (same);  *Skinner v. Tuscan Inc.*, No. CV-18-00319-TUC-RCC, 2020 WL 5946898, at *5 (D. Ariz. Oct. 7, 2020) (same). This Court will not grant Defendant's Motion for Summary Judgment on this basis.

Defendant also argues that Plaintiffs' misappropriation of likeness claim is barred by the applicable statute of limitations. (Doc. 45 at 23). Defendant argues that, while "no case has ever addressed the applicable statute of limitations for such a claim," a one-year statute of limitations should apply because that is the statute of limitations for invasion of privacy cases. (Doc. 45 at 23). Plaintiff argues "this Court has already rejected, repeatedly, the argument that a one-year statute of limitations applies to Plaintiffs' right of publicity claims." (Doc. 59 at 17).

"When a defendant asserts the statute of limitations as a defense, the defendant has the burden of proving that the complaint falls within the statute." *Troutman v. Valley Nat.*

2

*Bank of Ariz.*, 826 P.2d 810, 814 (Ariz. Ct. App. 1992). In 2018, District Judge Susan R. Bolton rejected the argument that a one-year statute of limitations applies to misappropriation of likeness claims because, unlike invasion of privacy claims, the right of publicity is rooted in property and not privacy. *Electra v. Idaho Business Holdings LLC*, No. CV-18-01604-PHX-SRB, Doc. 79 at 5 (D. Ariz. Sept. 24, 2020) (determining that the right of publicity is more akin to a property right because it is intended to protect from injuries to the commercial value of a plaintiff's likeness, and is unlike a privacy right which protects "personal injuries of the sort remedied by a claim for, *e.g.*, invasion of privacy by intrusion or publication of private facts") (citing Rstmt. 3d Unfair Competition § 46 cmt. a); *In re Reynolds*, 327 P.3d at 216 ("[T]he right of publicity is more akin to a property right, the breach of which is measured by resulting pecuniary loss, than a personal right whose violation results in emotional injury."). This Court has adopted this analysis several times. *See, e.g.*, *Skinner*, 2020 WL 5946898, at *8 (adopting Judge Bolton's analysis and concluding that "Defendant's argument fails to prove the statute of limitations is one year"). Because Defendant has not met its burden of showing that a one-year statute of limitations applies (nor does it propose an alternative timeline), the Court cannot grant it summary judgment on Plaintiffs' Misappropriation of Likeness claims based on untimeliness.

Plaintiffs argue they, too, are entitled to summary judgment on their misappropriation of likeness claim. Under Arizona law, "'[o]ne who appropriates the commercial value of a person's identity by using without consent the person's name, likeness, or other indicia of identity for purposes of trade is subject to liability' for resulting damages." *In re Estate of Reynolds,* 327 P.3d 213, 215 ¶ 8 (Ariz. Ct. App. 2014) (alteration in original) (quoting Restatement (Third) § 46). A claim for appropriation typically arises from "the unauthorized use of a well-known person's name or likeness in connection with the advertising of goods or services." *Id.* at 216 ¶ 11. Nonetheless, appropriation of "the identity of an unknown person may possess commercial value" as well. *Id.* (citation omitted).

3

Where a defendant appropriates a plaintiff's "visual likeness," *i.e.*, the plaintiff's image, the plaintiff must show that she is "reasonably identifiable from the photograph or other depiction." Restatement (Third) § 46 cmt. d. "Relevant evidence includes the nature and extent of the identifying characteristics used by the defendant, the defendant's intent, the fame of the plaintiff, evidence of actual identification made by third persons, and surveys or other evidence indicating the perceptions of the audience." *Id*. Whether the defendant's use of a plaintiff's image identifies the plaintiff is a question of fact. *Id*. Here, Plaintiffs' Motion for Summary Judgment (Doc. 42) must be denied as it is not "beyond controversy" that Defendant appropriated Plaintiffs' images as that finding must be made by the trier of fact. *See S. California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003); *Geiger*, 2020 WL 3545560, at *8.

**B. Lanham Act**

Plaintiffs next allege False Association under Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq*. To prevail on their false association claims under the Lanham Act, Plaintiffs must prove that Defendant: "(1) use[d] in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or misrepresents the characteristics of his or another person's goods or services." *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902 (9th Cir. 2007). Here, there are questions of fact as to the likelihood of confusion requirement which preclude summary judgment.

Under § 1125(a)(1)(A), "[a] false endorsement claim based on the unauthorized use of a celebrity's identity . . . alleges the misuse of a trademark, *i.e.*, a symbol or device such as a visual likeness, vocal imitation, or other uniquely distinguishing characteristic, which is likely to confuse consumers as to the plaintiff's sponsorship or approval of the product." *Wendt v. Host Int'l, Inc*., 125 F.3d 806, 812 (9th Cir. 1997) (quoting *Waits v. Frito-Lay, Inc*., 978 F.2d 1093, 1110 (9th Cir. 1992)). The Ninth Circuit has "identified eight factors—called the *Sleekcraft* factors—for determining whether a defendant's use of a mark is likely to cause consumer confusion: (1) the strength of the mark; (2) the proximity of the goods;

4

(3) the similarity of the marks; (4) evidence of actual confusion; (5) the marketing channels used; (6) the type of goods and the degree of care likely to be exercised by the purchaser; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines." *Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 264 n.6 (9th Cir. 2018); *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979).

*1. Strength of Plaintiffs' Marks*

In cases involving an alleged celebrity, "'mark' means the celebrity's persona." *White v. Samsung Elecs. Am., Inc.*, 971 F.2d 1395, 1400 (9th Cir. 1992). The "strength" of a plaintiff's "mark refers to the level of recognition that the celebrity has among the segment of the public to whom the advertisement is directed." *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1007 (9th Cir. 2001).

Plaintiff argues that "[s]ince nothing in the record creates any material dispute that Cloud Nine used actual pictures of Plaintiffs in their advertisements, the 'similarity of marks' *Sleekcraft* factor could not more strongly favor Plaintiffs." (Doc. 42 at 10). In contrast, Defendant argues that "none of the Plaintiffs have provided any evidence to support their alleged celebrity status or recognition within the marketplace above and beyond what other courts have already held to be insufficient." (Doc. 45 at 14).

The strength of each Plaintiff's mark is a triable issue of fact. Each Plaintiff has a strong social media following, and some Plaintiffs have tens of millions of followers on some social media platforms. However, Plaintiffs' surveys indicate that only approximately 18.75% of individuals surveyed recognized the Plaintiffs. (Doc. 42 at 3). "A jury could reasonably conclude that, given each Plaintiffs' following and recognition rate, they are sufficiently well-known to claim false association; or it could conclude that given over 80% of respondents did not recognize the Plaintiffs they are too obscure to bring the claim." *Mitcheson v. El Antro LLC*, No. CV-19-01598-PHX-GMS, 2020 WL 7075239, at *13 (D. Ariz. Dec. 3, 2020); *see also Pepaj v. Paris Ultra Club LLC*, No. CV-19-01438-PHX-MTL, 2021 WL 632623, at *9 (D. Ariz. Feb. 18, 2021) (finding that plaintiffs' "mark" could "tip in favor of either side" because only 15% of survey respondents

recognized the plaintiffs and the defendant offered "evidence suggesting that Plaintiffs merely engaged in sporadic modeling and appearance roles such that their personas are not sufficiently recognizable") (internal quotations omitted); *Takeguma v. Freedom of Expression LLC*, No. CV-18-02552-PHX-MTL, 2021 WL 487884, at *13 (D. Ariz. Feb. 10, 2021) (same); *Skinner*, 2020 WL 5946898, at *12 (same). This factor weighs against granting summary judgment.

### 2. Relatedness of the Goods

"In cases concerning confusion over celebrity endorsement, the plaintiff's 'goods' concern the reasons for or source of the plaintiff's fame." *White*, 971 F.2d at 1400 (finding Vanna White's fame related to VCR's because she is known for televised performances). Courts thus consider "the relatedness of the fame or success of the plaintiff to the defendant's product." *Downing*, 265 F.3d at 1007. The relevant question is "whether a consumer would be confused as to [Plaintiffs'] association with or sponsorship of [Cloud Nine]." *Wendt*, 125 F.3d at 813.

Plaintiffs argue this factor favors them because "although Plaintiffs and Defendant are not in the same business, they are competitors in that they vie for the same 'dollar' by seeking to attract customers and/or clientele by and through the use of the image of a beautiful woman." (Doc. 42 at 10). In contrast, Defendant argues "Defendant's product is providing entertainment at a gentlemen's club. The Plaintiffs have already argued that their fame is patently unrelated to such goods/products. Thus, this factor weighs in favor of Defendant." (Doc. 45 at 17).

Regardless of how each party frames the issue, the nature of the Defendant's advertising and at least a portion of the Plaintiffs' modeling work demonstrate that both parties market female sexuality. *See Mitcheson*, 2020 WL 7075239, at *12. A reasonable jury could find that Defendant chose Plaintiffs' photos because of this overlap in emphasis. Further, Plaintiffs' survey indicates that 71% of respondents "believed that Plaintiffs were involved in the lifestyle depicted in the Cloud Nine advertisements." (Doc. 42 at 3). However, Defendant alleges that the survey "suffer from several methodological flaws that

render them unreliable, irrelevant, and thus inadmissible." (Doc. 61 at 7). The factfinder will have the opportunity to consider Defendants objections to the survey evidence when weighing its probative value. *Pepaj*, 2021 WL 632623, at *9. Accordingly, though this factor tips in Defendant's favor, there is a triable issue as to the relatedness of the parties' goods.

### 3. Similarity of the Marks

In celebrity cases, the Court considers "the similarity of the likeness used by the defendant to the actual plaintiff." *Downing*, 265 F.3d at 1008. Defendant concedes that "the subject photographs are unaltered photographs of the Plaintiffs." (Doc. 45 at 17). This factor favors the Plaintiffs because Defendant used actual photos of the Plaintiffs in its advertisements. *See Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1069 (9th Cir. 2015) ("No one disputes the [similarity of the marks] factor: A.V.E.L.A. used actual photos of Marley on its merchandise."); *Skinner*, 2020 WL 5946898, at *11 (finding that "[t]his element weighs in Plaintiffs' favor" because "there is no dispute that the photos in the advertisements are carbon copies of Plaintiffs"); *Downing*, 265 F.3d at 1008 ("Applying the third factor, the similarity of the likeness, to the Appellants is clear because it is an actual photograph of the Appellants with their names designated.").

### 4. Evidence of Actual Confusion

"Evidence of actual confusion is relevant to likelihood of confusion but not required in a false endorsement claim." *Fifty-Six Hope Rd. Music*, 778 F.3d at 1070. However, "if a party produces evidence from which a reasonable jury could surmise that an 'appreciable number' of people are confused about the source of the product, then it is entitled to a trial on the likelihood of confusion—although it will not necessarily prevail at that trial." *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 902 (9th Cir. 2002) (quoting *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1151 (9th Cir. 2002)).

Defendants argue that "Plaintiffs have not provided a single piece of evidence establishing actual confusion amongst Defendant's consumers." (Doc. 45 at 17). However, "survey evidence may establish actual confusion." *Fortune Dynamic, Inc. v. Victoria's*

*Secret Stores Brand Mgmt., Inc*., 618 F.3d 1025, 1035 (9th Cir. 2010). Plaintiffs point to the results of their survey to argue that actual confusion has been established. Specifically, Plaintiffs' survey indicates that "64% of survey respondents believed Plaintiffs had some affiliation, association or connection with Cloud Nine; 79% believed Plaintiffs had agreed to sponsor, endorse or promote Cloud Nine; . . . 71% believed that Plaintiffs were involved in the lifestyle depicted in the Cloud Nine advertisements; [and] 61% believed that Plaintiff participated in events at Cloud Nine." (Doc. 42 at 12). This evidence contradicts Defendant's assertion that Plaintiffs have not set forth any evidence on actual confusion. *See Mitcheson*, 2020 WL 7075239, at *13. Again, the jury can decide what weight to give this survey, but the survey results create a triable issue on actual confusion.

### 5. Marketing Channels Used

"Convergent marketing channels increase the likelihood of confusion." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc*., 638 F.3d 1137, 1151 (9th Cir. 2011) (quoting *Sleekcraft*, 599 F.2d at 353). But "the shared use of a ubiquitous marketing channel," like the Internet, "does not shed much light on the likelihood of consumer confusion." *Id*.; *Playboy Enters., Inc. v. Netscape Commc'ns Corp*., 354 F.3d 1020, 1028 (9th Cir. 2004) (concluding a plaintiff and defendant's use of the Internet as a marketing channel rendered the factor "equivocal").

Plaintiffs argue that "since both parties unquestionably use the internet as a marketing channel, this factor also heavily favors Plaintiffs." (Doc. 42 at 11). In contrast, while Defendant concedes that both parties used social media, Defendant argues "the marketing channels used are not in direct competition with the Plaintiffs" but does not provide any analysis for this assertion. (Doc. 45 at 18).

Both parties use social media platforms to market their products. As explained above, "the shared used of the internet as a marketing channel is ubiquitous and, thus, does not shed much light on the likelihood of consumer confusion." *Groupion, LLC v. Groupon*, Inc., 859 F. Supp. 2d 1067, 1077 (N.D. Cal. 2012) (citing *Network Automation v. Advanced System Concepts, Inc*., 638 F.3d 1137, 1151 (9th Cir. 2011)). This factor therefore sheds

little light on the Court's overall analysis.

### 6. Likely Degree of Purchaser Care

"Low consumer care . . . increases the likelihood of confusion." *Playboy Enters., Inc.*, 354 F.3d at 1028. The degree of care analysis requires the Court to consider the nature and cost of the goods at issue. *Network Automation, Inc.*, 638 F.3d at 1152. When "goods are expensive, [a] buyer can be expected to exercise greater care." *Id.* "Consumer care for inexpensive products," on the other hand, "is expected to be quite low." *Playboy Enters., Inc.*, 354 F.3d at 1028.

Plaintiffs argue that "[s]ince attendance at a dance and night club is not a particularly expensive endeavor, the reasonable consumer would not be expected to exercise much care in choosing between clubs, and thus this factor also strongly favors Plaintiffs." (Doc. 42 at 13). In response, Defendant argues "consumers that visit nightclubs are generally sophisticated consumers who are selective about which nightclubs they choose to visit." (Doc. 45 at 18).

Although the parties disagree as to the level of care nightclub patrons exercise, neither party offers evidence to support their assertions. Given this lack of evidence, "[t]he difficulty of trying to determine with any degree of certainty the level of care that nightclub patrons exercise when choosing between establishments confirms the need for this claim to be heard by a jury." *Pepaj*, 2021 WL 632623, at *10; *see also Fortune Dynamic, Inc.*, 618 F.3d at 1038 ("[T]he difficulty of trying to determine with any degree of confidence the level of sophistication of young women shopping at Victoria's Secret only confirms the need for this case to be heard by a jury."); *Takeguma*, 2021 WL 487884, at *15 (same); *Mitcheson*, 2020 WL 7075239, at *14 ("The likely degree of purchaser care presents a triable issue of fact.").

### 7. Defendant's Intent in Selecting the Mark

When considering a defendant's intent, the relevant question is whether the defendant "intended to profit by confusing consumers concerning the endorsement of [the defendant's goods]." *White*, 971 F.2d at 1400 (internal quotations omitted).

Plaintiffs argue this factor weighs in their favor because "[a]s made obvious by the subject advertisements, Defendant's intent in using world-class professional models in Cloud Nine's advertising was to confuse consumers concerning each Plaintiff's employment at Cloud Nine, their association or affiliation with Cloud Nine, or each Plaintiff's sponsorship or promotion of Cloud Nine." (Doc. 42 at 12). Defendant argues this factor weighs in its favor because "Defendant did not choose the Plaintiffs for any reason in particular (like fame or notoriety)." (Doc. 45 at 18).

This factor presents a triable issue of fact because "[i]ssues of credibility, including questions of intent, should be left to the jury." *Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999); *see also Skinner*, 2020 WL 5946898, at *12 (considering the exact same arguments as those made by both parties in this case and finding, citing *Harris*, that "[i]ntent to confuse is an issue of fact that the Court cannot decide here"); *Takeguma*, 2021 WL 487884, at *15 (same).

### *8. Likelihood of Expansion of the Product Lines*

"[A] strong possibility that either party may expand [its] business to compete with the other" increases the likelihood of confusion. *Network Automation, Inc.*, 638 F.3d at 1153. Here, Plaintiffs "submit that the final *Sleekcraft* factor, likelihood of expansion of the parties' product lines, would not apply in this action." (Doc. 42 at 13, n6). Accordingly, this factor is inapposite.

### *9. Conclusion*

In light of the foregoing, there remain issues of fact regarding Plaintiffs' Lanham Act claims that preclude judgment as a matter of law. The Court cannot grant summary judgment in favor of either party.

### C. False Light – Invasion of Privacy

Plaintiffs argue they have established a claim for False Light because each Plaintiff "has testified categorically that she wanted nothing to do with Cloud Nine" and that "a reasonable person would consider such association to be highly offensive." (Doc. 42 at 14). In contrast, Defendant first argues the photos "could not possibly result in a 'major

misrepresentation' of Plaintiffs' character, history, activities or beliefs" because they "were not manipulated in any way" and "Plaintiffs agreed to pose in undoubtedly risqué positions and wardrobe." (Doc. 61 at 11). Defendant also argues the False Light claim is barred by the one-year statute of limitations. (Doc. 61 at 11).

### 1. *Statute of Limitations*

Plaintiffs concede "Defendant is correct that a false light claim has a one-year statute of limitations," and there is no factual dispute as to the dates of publication of the photographs at issue. (Doc. 59 at 18). However, Plaintiffs argue that "pursuant to the continuous tort doctrine, accrual of a statute of limitations 'begins at the termination of the wrongdoing, rather than at the beginning'" and that "for months and years after the original publication date Defendant reaped the benefit of its misappropriations by publicly representing Plaintiffs were employed at Cloud Nine or otherwise affiliated with the Club." (Doc. 59 at 18-19).

In the absence of Arizona caselaw, this Court has repeatedly refused to apply the continuing wrong doctrine to false light claims. *See, e.g.*, *Geiger*, 2020 WL 3545560, at *7 ("[T]he continuing wrong doctrine has been explicitly rejected under Arizona law."); *Skinner*, 2020 WL 5946898, at *3 ("[U]nder the continuing wrong doctrine, there must be a continuous series of wrongful actions for the accrual date to begin at termination. In this case, . . . there are no continuous actions. Instead, there is one discrete posting of a Plaintiff's image per claim against Defendant. As such, the continuing wrong doctrine does not apply and cannot prolong Plaintiffs' time for filing." (internal citations omitted)); *Pinder v. 4716 Inc.*, 494 F. Supp. 3d 618, 627 (D. Ariz. 2020) ("[T]he Arizona appellate court has declined to utilize the continuing wrong doctrine in the context of false light claims. . . . Therefore, any photo forming the basis of a false light claim must have been posted within one year of the filing of the Complaint."). In remains true that, under Arizona law, the continuing wrong doctrine does not apply to Plaintiffs' false light claims. *Watkins v. Arpaio*, 367 P.3d 72, 77 (Ariz. Ct. App. 2016) ("We are unaware of any authority compelling the conclusion that a false-light claim is subject to the 'continuing wrong'

doctrine, and we decline [plaintiff]'s request to apply it here."). Accordingly, the limitations clock for Plaintiffs' false light claims began running on the date each image was posted, and expired one year later.

Here, Plaintiffs' Complaint was filed on December 19, 2018. (Doc. 1). Accordingly, this Court will grant summary judgment in favor of Defendant on any false light claims for images published before December 19, 2017. This includes the image of Plaintiff Claudia Sampedro posted in July of 2016 (Doc. 1 at 9), the image of Plaintiff Tiffany Toth Gray posted in December of 2015 (Doc. 1 at 10), the image of Plaintiff CJ Gibson posted in December of 2015 (Doc. 1 at 11), the image of Plaintiff Amanda Cerny posted in December of 2015 (Doc. 1 at 12), the image of Plaintiff Jessica Killings posted in November of 2016 (Doc. 1 at 13), and the image of Plaintiff Brenda Geiger posted in May of 2017 (Doc. 1 at 14).

### 2. *Prima Facie Case*

All that remains is a second image of Plaintiff Jessica Killings, an image of Plaintiff Amber Lancaster, and an image of Plaintiff Paola Canas, all of which were posted after December 19, 2017. (Doc. 1 at 13, 14-16).

To state a claim of false light, a plaintiff must demonstrate "(1) the defendant, with knowledge of falsity or reckless disregard for the truth, gave publicity to information placing the plaintiff in a false light, and (2) the false light in which the plaintiff was placed would be highly offensive to a reasonable person in the plaintiff's position." *Doe v. Oesterblad*, No. CV–13–01300–PHX–SRB, 2015 WL 12940181, at *5 (D. Ariz. June 9, 2015) (quoting *Desert Palm Surgical Grp., P.L.C. v. Petta*, 343 P.3d 438, 450 (Ariz. Ct. App. 2015)); *see* Restatement (Second) of Torts ("Rstmt. 2d Torts") § 652E (Am. Law Inst. 1977).

As for the first requirement, "[a] false light cause of action may arise when something untrue has been published about an individual, or when the publication of true information creates a false implication about the individual." *Godbehere v. Phoenix Newspapers, Inc.*, 162 Ariz. 335, 341, 783 P.2d 781, 787 (1989) (emphasis in original)

(internal citations omitted). Thus, the fact the advertisements include accurate depictions of Ms. Killings, Ms. Lancaster, and Ms. Canas does not preclude their false light claims. *See, e.g.*, *Pepaj*, 2021 WL 632623, at *6.; *see also Skinner*, 2020 WL 5946898, at *3 (considering the same argument as Defendant's argument here and concluding that "Defendant's reasoning ignores the visual and written innuendo within its advertising. The misrepresentation is not necessarily the reproduction of the photos, but the connection between Plaintiffs and Defendant's strip club"). There is, however, a triable issue as to the second requirement, *i.e.* whether being associated with Cloud Nine would be highly offensive to a reasonable person. *See Desert Palm*, 236 Ariz. at 580, 343 P.3d at 438 (concluding the "jury was in the best position to resolve . . . material questions of fact" as to whether a defendant's statements "painted Plaintiffs in a false light").

This Court has already concluded in previous similar cases that being falsely associated with strip clubs raises a triable issue on the offensiveness element. *See, e.g.*, *Skinner*, 2020 WL 5946898, at *4 (denying summary judgment on plaintiffs' false light claims because "simply because a woman has modeled in risqué clothing (or even previously worked at a strip club) does not mean a reasonable person in a similar position could not be offended by the suggestion that the person is an exotic dancer at the defendant's strip club"); *Pinder*, 494 F. Supp. 3d at 629 (same); *Longoria v. Kodiak Concepts LLC*, No. CV-18-02334-PHX-DWL, 2021 WL 1103020, at *9 (D. Ariz. Mar. 23, 2021) ("If the jury finds that the advertisements convey the impression that Longoria and Canas were strippers at Defendant's club, the jury may find the "highly offensive" element more easily met.").

However, this Court has also denied summary judgment based on the "highly offensive" requirement for regular nightclubs as well. In *Pepaj*, the defendant argued that there was "simply nothing offensive about a nightclub" and that the plaintiffs "agreed to pose in undoubtedly risqué positions and wardrobe" in the original images. *Pepaj*, 2021 WL 632623, at *6. Although the images did not necessarily create the false impression that the plaintiffs were exotic dancers, this Court nonetheless held that there was "a triable issue

as to whether being associated with [the night club] would be highly offensive to a reasonable person." *Id.* at *6. The Court cited *Douglass v. Hustler Mag., Inc.*, 769 F.2d 1128 (7th Cir. 1985), where the Seventh Circuit held that that a plaintiff who posed nude and consented to the publication of her photographs in Playboy magazine could recover for false light invasion of privacy when her photographs were instead published in Hustler magazine because the "jury may have focused on the differences between Playboy and Hustler and concluded that to be published in Hustler, as if she had posed for that publication, falsely placed her in a different light than the Playboy publication." *Id.* Here, the Court cannot conclude as a matter of law that association with Cloud Nine would not be highly offensive to a reasonable person. This issue must go to the jury.

## IV.   CONCLUSION

In sum, there remain triable issues of fact as to each of Plaintiffs' claims. Although the Court will grant summary judgment in favor of Defendant as to some of Plaintiffs' false light claims, the remainder of this case must go to a jury. Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion for Summary Judgment (Doc. 42) is **denied**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. 45) is **granted in part** and **denied in part**. Defendant's Motion for Summary Judgment is **granted** in favor of Defendant as to Plaintiffs' claims for invasion of privacy by false light for images published before December 19, 2017. Defendant's Motion for Summary Judgment is **denied** as to all other claims.

Dated this 25th day of May, 2021.

Honorable Steven P. Logan
United States District Judge

14